**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ANTWAN SPARKS** | : | **Case No. 1:16-cv-841** |
| **C/O Gerhardstein & Branch Co. LPA** | : | |
| **441 Vine Street** | : | **Judge** |
| **Cincinnati, OH 45202,** | : | |
| | : | **COMPLAINT AND JURY DEMAND** |
| **Plaintiff,** | : | |
| **vs.** | : | |
| | : | |
| | : | |
| **CITY OF MT. HEALTHY, OHIO** | : | |
| **7700 Perry Street** | : | |
| **Cincinnati, OH 4523** | : | |
| | : | |
| **Defendant.** | : | |

## I.   PRELIMINARY STATEMENT

1.      This is a civil rights case challenging race discrimination and retaliation against an African American police officer by the City of Mt. Healthy, Ohio.  Officer Sparks was discriminated against on the basis of his race after the new chief of Police, Vince Demasi, took charge of the Mt. Healthy Police Department on January 5, 2015.  Mt. Healthy discriminated against and retaliated against Officer Sparks after he lodged multiple complaints about the racial discrimination he was subjected to at Mt. Healthy.  Mt. Healthy discriminated against and retaliated against Officer Sparks by disciplining Officer Sparks differently than white officers, extending his probation, and ultimately failing his probation and terminating Officer Sparks' employment without cause after 21 months of dedicated service.  Officer Sparks, a member of the local Fraternal Order of Police filed a number of grievances and complaints about the discrimination and retaliation he was experiencing at Mt. Healthy.  An Arbitrator found on June 23, 2016 that Mt. Healthy improperly extended Officer Sparks' probationary period and ordered Mt. Healthy to reinstate Officer Sparks.  Despite the Arbitrator's decision, Mt. Healthy has not

reinstated Officer Sparks. Officer Sparks brings this action to seek fair compensation, reinstatement to his position as police officer, and assurances the race discrimination at the Mt. Healthy Police Department will cease.

## II.    JURISDICTION

2.      Jurisdiction of this court is invoked pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1343 (3) and (4).

3.      On or about May 21, 2015, Officer Sparks filed a charge of employment discrimination, based on race, among other things, pursuant to Title VII, with the U.S. Equal Employment Opportunity Commission. On or about October 23, 2015, Officer Sparks filed a charge of retaliation, pursuant to Title VII, with the U.S. Equal Employment Opportunity Commission. The EEOC issued a right to sue letter on both charges, which Plaintiff received on May 23, 2016. A copy of the charges and notices of right to sue are attached as Exhibit A.

## III.    PARTIES

4.      Plaintiff is a police officer with the City of Mt. Healthy Police Department. He resides in Hamilton County, Ohio. His race is African American. At all times relevant to this complaint, Officer Sparks was qualified to perform the duties of his position of part-time police officer. During all relevant times he has been an employee of the City of Mt. Healthy. He is an employee within the meaning of Title VII and O.R.C. § 4112.01(A)(3).

5.      Defendant City of Mt. Healthy is the employer of Plaintiff and is a public employer within the meaning of Title VII and O.R.C.§ 4112.01(A)(2).

## IV.    FACTS

6.    Officer Antwan Sparks began his career as a police officer in 2012 when he put himself through the Ohio Peace Officer's Training Academy at the age of 25.  He chose to be a police officer to serve his community and provide for his family.

7.    Officer Sparks first worked as a part-time police officer for the Village of Lincoln Heights.  He left in 2013 and then became an officer for the Mt. Healthy police department.

8.    Officer Sparks was an unpaid auxiliary part-time officer for Mt. Healthy starting on January 13, 2014.  He successfully completed his one month field training program and was promoted to a part-time paid police officer on February 16, 2014.  Prior to being injured in the line of duty, Officer Sparks issued numerous citations and made a large number of arrests.  He became a certified taser trainer for the police department.  He made a large marijuana arrest in the City, which took a drug dealer and over 750 grams of marijuana off the streets of Mt. Healthy.  That arrest earned the City over $1,200 in drug forfeiture money.

9.    The Mt. Healthy employee manual required newly hired employees to serve a probationary period of 12 calendar months.  The contract between Mt. Healthy and the Fraternal Order of Police also required police officers serve one calendar year of probation.

10.    The one year probationary period for Officer Sparks ended on February 16, 2015.  Therefore, as of February 16, 2015, Officer Sparks successfully completed his probationary period.

**Mt. Healthy Police Department is a Racially Charged Workplace**

11.    In October 2015, the Mt. Healthy Police Department compliment of officers was made up of 16 police officers (13 white and 3 African American) and an all-white command staff

3

of 2 sergeants and Chief Demasi.  Of the over 6,000 citizens who reside in the City of Mt.

Healthy, approximately 62% are white and 33% are African American.

    12.    Mt. Healthy treated officers differently based on race.  Similarly situated white

officers were not disciplined for the same procedure or rule violations African American officers

were disciplined for.  When white officers committed worse violations than African American

officers,  the white officers were not disciplined.

    13.    On at least one occasion a white officer was told he was being disciplined by his

Sergeant solely so the discipline of an African American officer would not look racist.

    14.    Over the years white Mt. Healthy police command staff have made racially

derogatory remarks about African American citizens and police officers.  In 2011, after a

confrontation with African American citizens of Mt. Healthy, a white officer was accused of

making a statement that "All blacks are n*****s."  A sergeant referred to his fellow sergeant as a

"f***ing n*****." After an African American officer complained, the fact finder who

investigated the complaints found the discriminatory remarks had been made.  The white officer

admitted to saying "Blacks are either African Americans, blacks or n*****s.  Neither the

sergeant or officer were disciplined.  More recently a white officer complained about the same

sergeant referring to an African American suspect as an "ape."

    15.    Chief Demasi has contributed to an atmosphere of racially targeted policing when

he told white festival goers in May 2015 that he would target African American children for

curfew violations since African American children caused the problems in Mt. Healthy.

    16.    A white officer recently resigned from Mt. Healthy Police Department because he

could no longer witness Chief Demasi discriminate and retaliate against African American police

officers.  He explained that the department was a "'sinking ship' infested with hatred and

4

retaliation." He stated in his resignation letter that policing is a hard enough profession without having to fight battles "both outside as well as inside the police department . . . ."

17.     Since Chief Demasi's hiring, two other African American police officers have made complaints of racial discrimination by Chief Demasi. Officer Sparks has supported these officers' discrimination claims including offering to be a witness for them.

**Officer Sparks' Injuries Occurred On the Job**

18.     On June 30, 2014, Officer Sparks' back was injured during an arrest of a combative suspect. He filed a worker's compensation claim. He was diagnosed with disk bulges in L3-L4, L4-L5, L5-S1, spinal stenosis, a lumbar strain, and lumbar radiculopathy. His medical treatment and work restrictions were supervised by a worker's compensation manager who worked with him to return to light duty soon after his injury and decrease his restrictions until he was able to return to work without restrictions on April 22, 2015.

19.     After his back injury, Officer Sparks was placed on restrictions at work. At times he was on full duty or no duty, as his recovery permitted. However, during most of those 10 months he was on light duty and continued to work as a police officer part-time, assigned to patrol. He put in a total of 1,275 hours during calendar year 2014. He worked more hours than was required of a part-time officer. While he was on light duty his responsibilities included manning the desk, taking police reports, signing charges, processing holders, managing outstanding warrants, fixing and troubleshooting the X26 tasers, answering questions about the use of tasers, and performing other patrolman duties as assigned. All these duties are to be performed by a police officer. Officer Sparks wore his uniform and firearm. At times, when cleared by his physician, he was also able to wear his duty belt and patrol in a vehicle.

20.    In October of 2014, Officer Sparks' fourth child was born and he alerted Mt. Healthy that he would only be available to work assignments on third shift (since he was the baby's and his toddler's primary care giver during the day shifts).  He continued to submit to Mt. Healthy each month, as he had his entire employment, his list of dates he was available to work the upcoming month.

21.    At all times that Officer Sparks was on duty he cooperated with his employer, worker's compensation administrator, and his medical professionals.  At times he had set backs in his recovery such as when he suffered lumbar radiculopathy and fell down a flight of stairs at home.  As he recovered and got closer to having his restrictions removed he was eager to return to road patrol and other duties of a police officer.  By February 2015 Officer Sparks was cleared for return to car duty and Mt. Healthy adjusted his schedule accordingly.  His doctors also medically cleared him to wear his duty belt (with his equipment, taser, handcuffs, etc.) when he returned to car duty.

22.    All restrictions were lifted by April 22, 2015 and Officer Sparks returned to full duty status.

23.    On September 24, 2015, while handcuffing a suspect to a gurney, the suspect resisted arrest and injured Officer Sparks' wrist.  He was able to continue to work but was on light duty restrictions again.

**Officer Sparks Experienced Race Discrimination After Chief Demasi was Hired**

24.    Officer Sparks received no discipline, write-ups, reprimands, counseling, or negative reviews prior to Chief Demasi's arrival in early January 2015.  During his initial month of employment, Officer Sparks was reviewed each shift and passed his field training program. He received no other performance evaluations in his 21 months on the job.

25. As soon as Chief Demasi arrived he took a number of adverse actions against Officer Sparks that were not implemented against white officers.

26. For example, on January 13, 2015, Mt. Healthy extended Officer Sparks' probationary period in violation of the FOP contract and City employee manual. At least one similarly situated white officer did not have his probation extended even though he too was injured and was on light duty.

27. Chief Demasi refused Officer Spark's requests to attend trainings; even training that was free of charge. However, white officers were allowed to attend trainings.

**March 28, 2015 Discipline was Discriminatory**

28. On March 17, 2015 Chief Demasi ordered Officer Sparks removed from light duty and placed on "no-duty" status. Mt. Healthy gave Officer Sparks no reason for this status change. Officer Sparks was never instructed by the worker's compensation manager that he was not permitted to work light duty in March 2015.

29. Whenever Officer Sparks was on no-duty status he was not allowed to work as a police officer. As a result, he could not testify in court on cases where he was the arresting officer.

30. Chief Demasi knew that when he placed Officer Sparks on no-duty status on March 17, 2015 Officer Sparks would not be able to attend court on a case March 20, 2015.

31. Nonetheless Chief Demasi instructed the sergeant to issue a written reprimand to Officer Sparks for missing court on March 20, 2015. The written reprimand, issued March 20, 2015, stated that Officer sparks "failed to meet expectations." The sergeant also met with Officer Sparks and gave him a verbal counseling about the same incident.

32.     Chief Demasi did not instruct the sergeant to reprimand Officer Spark's white partner who also missed court on March 20, 2015.  His white partner was on full-duty at the time and in every respect similarly situated to Officer Sparks.  The white partner did not receive a written reprimand on March 20, 2015, a rating of "failed to meet expectations," or a verbal counseling for missing the March 20, 2015 court date.

33.     In fact, the white officer had missed three additional court hearings in the past year but was not disciplined on March 20, 2015.  Mt. Healthy did instigate disciplinary measures against the white officer, but only after Officer Sparks complained he was being disciplined for missing court when white officers were not.

34.     Officer Sparks challenged this discipline by filing grievances on March 28, 2015 and on April 6, 2015 complaining the discipline was racial discrimination.

35.     On April 8, Chief Demasi denied Officer Spark's grievances.  On May 5, 2015 the City rejected the March 28, 2015 grievances.  As a result, this discipline was not removed from Officer Spark's record and was later used by Chief Demasi and the City as a grounds for failing his probation and termination.

36.     Mt. Healthy restored Officer Sparks to light duty status without explanation on March 28, 2015.

**March 30, 2015 Discipline was Discriminatory**

37.     On March 30, 2015 at 8:45 am, Chief Demasi stopped Officer Sparks at the station, who was on his way to court to testify in a case.  Chief Demasi chastised him for wearing his uniform to court, making Officer Sparks late to court.

38.     When Officer Sparks arrived to court the case had not yet been called.  He spoke to the prosecutor and waited for the case to be called.  The case was dismissed because the

prosecuting witness, i.e., the victim of the domestic violence crime who had been subpoenaed, did not appear.

39.     Even though Officer Sparks arrived before his case was called, he received a written reprimand for failing to appear in court on at 9:00 a.m.

40.     White officers who did not appear in court or who arrived after 9:00 a.m. were not disciplined for being late.

41.     This discipline was later used by Chief Demasi and the City as grounds for Officer Sparks' failure of probation and termination.

**Officer Sparks Complained about Race Discrimination to Mt. Healthy**

42.     In addition to Officer  Sparks' grievances filed on March 28 and April 6 claiming discrimination, Officer Sparks alerted the Mt. Healthy City Manager to his concerns that Chief Demasi and the City were discriminating against him based on race.

43.     On or about March 24, 2015, Officer Sparks responded to the City's rejection of his March 9, 2015 grievance.  The March 9 grievance complained about his being removed from the schedule.  In his response to the City filed on March 24th, Officer Sparks clarified that he believed his schedule was changed for racially discriminatory reasons.  The City rejected this claim of discrimination on May 4, 2015.

44.     On March 30, 2015, Officer Sparks emailed City Manager Bill Kocher requesting an emergency meeting to discuss Chief Demasi's ongoing bullying and acts of discrimination.

45.     On April 7, 2015 Officer Sparks filed a formal complaint of discrimination with City Manager Kocher complaining of workplace bullying, retaliation and discrimination.

46.     On May 1, 2015 Officer Sparks and his union representative met with City Manager Kocher to discuss Officer Spark's formal complaint of discrimination.  During the

9

meeting when Officer Sparks was attempting to explain the discrimination and retaliation he was suffering, Mr. Kocher warned him he was still on probation.  After that Officer Sparks realized the City would not resolve his complaints of discrimination and retaliation.

47.     On May 4, 2015, the City rejected all of Officer Spark's grievances that raised discrimination.

48.     On May 15, 2015, Officer Sparks filed a grievance charging that the probation extension and discipline were in retaliation to his complaints of racial discrimination.  Officer Sparks advised the City that a white officer was told he was being disciplined in order to make discipline to African American officers appear not to be racial.  He also advised the City that he felt threatened by Mr. Kocher's remark that Officer Sparks was still on probation.  Officer Sparks requested an independent investigation and for all discrimination and retaliation to cease.

49.     On May 21, 2015 Officer Sparks filed his EEOC charge of discrimination.

50.     On May 29 Mr. Kocher rejected Officer Spark's formal complaint of discrimination.

**Mt. Healthy Retaliated Against Officer Sparks**

51.     After Officer Sparks first claimed he was being discriminated against based on his race in March, April, and May 2015, the City issued discipline against him.  The discipline was either not meted out to white officers for the same alleged violation or the allegations against Officer Sparks were not true.

52.     On May 14, 2015, Chief Demasi and Mt. Healthy extended Officer Spark's probation without legal authority and in retaliation Officer Sparks' numerous race discrimination complaints.  However, Mt. Healthy did not remove Officer Sparks from probation and make him a civil servant as required by its employee manual and FOP contract.

53.     By extending Officer Sparks' probation past the 1 year term, which ended February 16, 2015, Chief Demasi and Mt. Healthy were able to use their alleged infractions made against Officer Sparks after February 16, 2015 as the basis to fail his probation.  Had Officer Sparks been removed from probation on February 16, 2015 and become a non-probationary civil servant Mt. Healthy would not have been able to terminate his employment for the same alleged infractions.

54.     On October 20, 2015, in retaliation for Officer Sparks' multiple complaints of discrimination, at the recommendation of Chief Demasi, Mt. Healthy failed Officer Sparks' probation.  Chief Demasi based his recommendation solely on alleged actions taken by Officer Sparks' *after* he passed probation on February 16, 2015.

55.     Chief Demasi's recommendation to fail Officer Sparks' probation based on a number of false allegations of infractions, or based on allegations of policy violations for which Officer Sparks was never disciplined, or based on alleged policy violations that white officers were allowed to make with consequences.

56.     Chief Demasi was the final policy maker for the City in deciding when to fail an officer's probation.

57.     Chief Demasi's recommendation to fail Officer Spark's probation, and thus terminate his employment on October 20, 2015, was made immediately after the City responded to Officer Spark's EEOC charge of discrimination, after Officer Sparks filed a number of grievances complaining of race discrimination, and after Officer Sparks filed a complaint with the Mt. Healthy City Manager complaining of race discrimination.

58.     Mt. Healthy's decision to follow Chief Demasi's recommendation and fail Officer Sparks' probation was in retaliation for Officer Sparks engaging in protected activity of making a

complaint to the City Manager, filing grievances, and filing an EEOC charge of race discrimination.

59.     The City of Mt. Healthy approved Chief Demasi's recommendation and terminated Officer Sparks from his employment on October 21, 2015.

60.     Officer Sparks filed a second charge with the EEOC charging retaliation on October 23, 2015.

61.     Officer Sparks then filed a grievance on October 30, 2015 claiming he was terminated in violation of the FOP contract and that his termination was racially discriminatory and retaliatory.  At the arbitration hearing for his grievance the FOP and City of Mt. Healthy agreed to present the discrimination grievance to the EEOC.  On June 23, 2016, the arbitrator ruled in Officer Sparks' favor and found that Officer Sparks had successfully completed his probationary period and ordered the city to reinstate Officer Sparks.  As of the date of this filing the City has not reinstated Officer Sparks.

62.     Defendant City of Mt. Healthy's policies, practices, customs, and usages permitting discrimination and retaliation against African American police officers who complain of race discrimination were each a moving force behind the retaliation and discrimination of Officer Sparks.  At all times relevant to this action the City's supervisory officers and officials, including Chief Demasi, have acted consistently with and pursuant to the City's policy, custom and usage permitting discrimination and retaliation against African American police officers who complain of race discrimination and support other officer's complaints of discrimination.

63.     At all times relevant to this action, Defendant's supervisory officers' actions, including Chief Demasi's, unreasonably interfered with plaintiff's work performance and created an intimidating, hostile, and offensive work environment.

12

64.    As a direct and proximate result of Defendant's conduct, Officer Sparks has suffered and will continue to suffer damages from humiliation, embarrassment, disgrace, loss of dignity and self-worth, emotional distress, mental suffering, lost employment, the loss of his peace officer certification, the loss of his ability to be promoted, and lost wages, benefits, and seniority.

65.    Officer Sparks is able to do the job of police officer and seeks reinstatement to that position and seniority retroactive to February 16, 2015.

## V.  FIRST CAUSE OF ACTION – TITLE  VII –RETALIATION AND DISCRIMINATION

66.    Defendant discriminated against Plaintiff on the basis of his race, created a hostile work environment, and retaliated against Plaintiff in response to his engaging in protected activities in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

## VI. SECOND CAUSE OF ACTION- O.R.C. § 4112.99- RACE DISCRIMINATION AND RETALIATION

67.    Defendant discriminated against Plaintiff on the basis of his race, created a hostile work environment, and retaliated and discriminated against Plaintiff because Plaintiff opposed unlawful discriminatory practice, complained of racial discrimination, supported other African American officers who made complained of racial discrimination, made  charges of discrimination, and participated in an investigation of his and other officers' charges of discrimination in violation of Ohio Revised Code § 4112.01 *et seq,* Ohio Revised Code §§ 4112.02(A) and (I).

## VII.  THIRD CAUSE OF ACTION – 42 U.S.C. SECTION 1983 EQUAL PROTECTION AND DUE PROCESS

68.    Defendant has acted under color of law and has violated the rights secured to the Plaintiff under the Equal Protection Clause and the Due Process Clause of the Fourteenth

Amendment to the United States Constitution by treating Plaintiff differently than similarly situated non-African American police officers.

## VIII. CLAIM FOR RELIEF

WHEREFORE, Plaintiff demands that the court:

      A. Award Plaintiff reinstatement, back pay, all lost benefits, front pay and other equitable relief.

      B. Award Plaintiff compensatory damages in an amount to be determined at trial.

      C. Award Plaintiff prejudgment interest.

      D. Award Plaintiff reasonable attorney fees and costs.

      E. Order such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable by a jury.

Respectfully submitted,

/s/ Jennifer L. Branch
Jennifer L. Branch (0038893)
Trial Attorney for Plaintiff
Alphonse A. Gerhardstein (0032053)
Adam G. Gerhardstein (0091738)
Attorneys for Plaintiff
GERHARDSTEIN & BRANCH CO. LPA
441 Vine St., Suite 3400
Cincinnati, OH 45202
Phone: (513) 621-9100
Fax:   (513) 345-5543
jbranch@gbfirm.com
agerhardstein@gbfirm.com
adamgerhardstein@gbfirm.com